# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| TONY B. GILLET | CIVIL ACTION NO. 07-cv-0999 |
| VERSUS | JUDGE WALTER |
| RAY ANDERSON, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

Tony Gillet ("Plaintiff") is an inmate housed at David Wade Correctional Center. He filed this civil action against prison officials based on allegations that the prison chaplain has refused to purchase religious study/practice materials so that Plaintiff may exercise his religion. Before the court is a Motion for Summary Judgment (Doc. 24) in which Defendants argue that Plaintiff's complaint should be dismissed because it was filed before Plaintiff exhausted his administrative remedies. It is recommended, for the reasons that follow, that the motion be granted.

Congress has commanded that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement requires proper exhaustion of administrative remedies in accordance with prison procedures, and an untimely or otherwise procedurally defective grievance or appeal will not suffice. Woodford v. Ngo, 126 S.Ct. 2378 (2006).

The Louisiana Department of Public Safety and Corrections has adopted an Administrative Remedy Procedure ("ARP") for state prisons such as David Wade. The procedure, published in the Louisiana Administrative Code at Title 22, Part I, Section 325, permits inmates to request administrative remedies regarding policies, conditions or events within the prison. An inmate may commence the two-step process by writing a letter to the warden that briefly sets out the basis for the claim and the relief sought. An ARP screening officer will then send the inmate a notice advising that his request is being processed or has been rejected for procedural reasons.

If the grievance is accepted for processing, the warden (or a staff person assigned by her) will conduct fact finding and/or information-gathering and provide a response to the inmate within 40 days. An inmate who is dissatisfied with the first-step response may appeal to the Secretary of the Department. If the inmate is not satisfied with the second-step response, he may file suit.

Plaintiff filed a grievance that the screening officer numbered DWCC-07-0613. Plaintiff asked for access to Hermetic Gnostic books, organizations and services. He demanded a library of Hermetic Gnostic books equivalent to the library used by Christians at the prison. Plaintiff complained that when he asked the chaplain to purchase materials for him, the chaplain responded that it was prison policy not to purchase individual religious

materials. The chaplain advised that if Plaintiff was aware of any resources that would be willing to donate materials, the chaplain would make an official request for the materials.[1]

Becky Moss, the ARP screening officer, received the grievance and sent Plaintiff a letter. She explained that Plaintiff already had one request for administrative review pending, so the most recent grievance would be logged into the ARP system and processed after all previously accepted requests had been completed. That was consistent with a provision in the ARP regulation regarding multiple requests by one inmate. About two weeks later, Ms. Moss notified Plaintiff that a response to his grievance would be issued within 40 days.

Deputy Warden Jerry Goodwin issued a first-step response dated June 4, 2007. Goodwin explained that it was not the responsibility of the prison chaplain to purchase individual study materials. He added that the chaplain would make an official request for material if Plaintiff was aware of a source that would donate material associated with his cause. Goodwin explained, with respect to the request for a separate library, that the current

---

[1] This court generally upheld that policy in Harper v. Huff, 05 cv 439 (W.D. La.), a case in which a prisoner insisted that prison officials purchase him a book called *A Witches' Bible*. Authorities cited for that decision included Frank v. Terrell, 858 F.2d 1090 (5th Cir. 1988) (rejecting claim of Jewish inmate that prison must provide him free religious books and materials); Mack v. Reynolds, 2000 WL 1808277 (N.D. Tex. 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense."); and Cruz v. Beto, 92 S.Ct. 1079, 1082 (1972) (Burger, C.J., concurring) ("There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, [religious] materials cannot be denied to prisoners if someone offers to supply them.").

library used by Christians was the result of various parties making donations to the chapel and the general population.

That same day, June 4, 2007, Plaintiff drafted and signed his original judicial complaint. He mailed the complaint to the Clerk of Court that same day or the next day, as the postage mark on the envelope is dated June 5, 2007. The Clerk of Court received the complaint on June 7, 2007.

Meanwhile, Plaintiff signed on June 5, 2007, a request for step-two review of the administrative decision. The Secretary of the Louisiana Department of Public Safety and Corrections issued that second-step response on July 12, 2007. The Secretary determined that the response at the prison level was adequate, so he denied any administrative remedy. The Secretary's decision, the final step that exhausted Plaintiff's administrative remedies, occurred on July 12, more than 30 days after Plaintiff's original complaint was received by the Clerk of Court.[2]

The Supreme Court emphasized in Woodford that prisoners must properly exhaust their remedies in accordance with prison procedures. Plaintiff eventually exhausted his administrative remedies, but he did not do so until *after* he filed his complaint in this civil action. The Fifth Circuit has held that dismissal is required when a prisoner fails to exhaust

---

[2] A pro se prisoner's Section 1983 complaint is deemed filed when the prisoner tenders the complaint to prison officials for mailing. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). It is not critical to the decision of this case to apply this mailbox rule, so the court will refer to the original complaint as being filed when it was received by the Clerk of Court.

before he files suit, even if the grievance is pending at the time the suit is filed. Wendell v. Asher, 162 F.3d 887 (5th Cir. 1998). The prisoner in Wendell had a grievance pending, but he filed suit before Texas prison officials filed a step-two response. The Fifth Circuit held that, given the statutory mandate of Section 1997e, it had to affirm the district court's dismissal for failure to exhaust administrative remedies prior to filing suit. See also Harris v. Hegmann, 198 F.3d 153, 157 (5th Cir. 1999) ("Section 1997e clearly requires a state prisoner to exhaust available administrative remedies before filing a section 1983 suit and precludes him from filing suit while the administrative complaint is pending.")

Plaintiff responds that Wendell does not require dismissal because his complaint was not actually "filed" until October 3, 2007, after Plaintiff filed a second complaint on a form ordered by the court and had been granted leave to proceed in forma pauperis. That date came well after the step-two completion of the administrative process. Plaintiff's argument is not persuasive.

A civil action is commenced by filing a complaint with the court. Fed. R. Civ. P. 3. Plaintiff tendered to the clerk by June 7, 2007 a signed document that he called a complaint and that set forth in numbered paragraphs his allegations and stated the relief he requested. The document generally satisfied the requirements of a complaint that are found in Fed. R. Civ. P. 8, but Local Rule 3.2W requires that a complaint filed by an unrepresented prisoner be presented on a form supplied by the court. The rule states: "Complaints that do not comply with this Rule and which are not corrected after notice may be stricken by the court."

Plaintiff's complaint was not on the court-approved form, and Plaintiff failed to submit either the filing fee or a motion to proceed in forma pauperis. Magistrate Judge Methvin issued an order that began by observing that before the court was a civil rights action "filed on 06/07/07." She stated that the complaint was not on approved forms and that the filing fee had not been addressed. Plaintiff was directed to, within 30 days, "*amend* the pleadings by submitting the information indicated above" to the Clerk of Court. (emphasis added). The order, which was accompanied by an approved complaint form and an IFP application, warned that failure to amend the pleadings would result in them being stricken.

Plaintiff tendered on October 3, 2007 his second complaint on the approved form, as well as a completed motion for leave to proceed IFP. Magistrate Judge Hill granted pauper status the next day. The Clerk had docketed the original complaint received on June 7, 2007, and described it as "DEFICIENT PLEADING submitted by: Tony P. Gillet. Name of Pleading: Complaint." The docket entry went on to describe the reasons for the noted deficiency. Once those deficiencies were cured, the complaint tendered on the approved form was docketed as a "Complaint" as of October 3, 2007.

Rule 5 mandates that the clerk accept pleadings for filing even when the pleading technically does not conform with form requirements of local rules. It is the job of the court to then order the party to correct the defect or order the pleading stricken if warranted. A pro se party tendered a document that purported to be a complaint in McClellon v. Lonestar Gas Co., 66 F.3d 98 (5th Cir. 1995). The clerk stamped the purported complaint received (on a

timely date) but did not consider it filed because it was not in proper form. A magistrate judge directed the plaintiff to file a proper complaint, and the plaintiff did so (after the limitations period passed) and was granted permission to proceed in forma pauperis. The district court granted a motion to dismiss the complaint as untimely, but the Fifth Circuit reversed. It reasoned that the original filing should have been considered filed until such time that the court ordered the clerk to strike the pleading from the record, which never occurred.

The same is true in this case. Plaintiff's original complaint was never stricken, and his second submission was in substance an amended complaint that related back to the original filing date. McClellon, 66 F.3d at 102 (amendments that correct technical deficiencies in the original pleading relate back). Also, a delay by the Clerk of Court in stamping or treating a complaint "filed" due to the pendency of a motion to proceed IFP does not impact the date on which the civil action is deemed to have commenced. Ynclan v. Department of Air Force, 943 F.2d 1388, 1392 (5th Cir. 1991); Hernandez v. Aldridge, 902 F.2d 386 (5th Cir. 1990). If Defendants were to argue that Plaintiff's complaint is time-barred based on the delays in correcting the form deficiency and being granted IFP status, the court would almost certainly reject that argument. The rules cited above are designed to avoid such timeliness issues by deeming the civil action commenced upon the complaint being tendered to the clerk, even if technical defects or payments issues are not resolved until a later date.

Plaintiff may not gain advantage in this unique situation by seeking to shed himself of the procedural rules that ordinarily serve to protect a plaintiff. Section 1997e(a) states that "[n]o action shall be brought" with respect to prison conditions until administrative remedies are exhausted. Plaintiff commenced a civil action within the meaning of Rule 3 and the other Federal Rules of Civil Procedure. Thus, he brought an action that ran afoul of that statute. Dismissal is required.

Defendants ask that the dismissal be with prejudice. The district court in <u>Wendell</u> dismissed without prejudice, and the Fifth Circuit affirmed. In a similar setting, <u>Underwood v. Wilson</u>, 151 F.3d 292 (5th Cir. 1998), the district court dismissed with prejudice to refiling with pauper status, and the Fifth Circuit affirmed as well. The dismissal was deemed to serve as a deterrent to premature filings, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation and discouraging premature filings. <u>Underwood</u>, 151 F.3d at 296.

The precedents that made clear the requirement of pre-suit exhaustion were well established by 2007 when Plaintiff filed this action. Plaintiff could and should have waited until his administrative proceeding was completed before he filed this suit. It is recommended, under the circumstances, that Plaintiff's complaint be dismissed with prejudice to refiling it in forma pauperis.

This may seem a bit harsh, but unexhausted prisoner complaints are a heavy burden on the court and society. The court once raised the lack of exhaustion sua sponte and swiftly

terminated those cases, but the Supreme Court has now held that exhaustion is an affirmative defense that the defendants must raise. Jones v. Bock, 127 S.Ct. 910, 921 (2007). The unexhausted complaints are now a greater burden on the courts, society and the taxpayers because the court may not quickly dismiss the complaint but must order service on the defendants, have the marshal serve the defendants with summonses and copies of the complaint, and the defendants must then pay lawyers to file motions that raise the exhaustion defense. These burdens make it more important now than ever to discourage the premature filing of unexhausted prisoner complaints. The law is clear that exhaustion must be completed before the suit is filed. If the court merely dismisses without prejudice to another IFP filing that allows the prisoner who ignores or flaunts the rules to immediately recommence his action without penalty, it will be counter-productive to the constant efforts of the court to persuade prisoners to obey Congress's mandate and exhaust administrative remedies before suit is filed.

Plaintiff earlier filed a Motion for Preliminary Injunction (Doc. 17) in which he stated that he believed his life was in danger because he had filed this lawsuit. Plaintiff reports that an unnamed inmate told him that he overheard an unnamed member of the prison staff comment that the staff could not be held accountable if an inmate were to somehow receive the wrong medication. Plaintiff added that he had been the recipient of a false disciplinary report. A copy of a report shows that Plaintiff was disciplined for washing clothes in a bathroom despite a direct order not to do so. There is no indication that Plaintiff exhausted

his administrative remedies with respect to these claims before he presented them to the court. Plaintiff has also failed to articulate specific facts that could satisfy the heavy burden that must be overcome to obtain such extraordinary relief as a preliminary injunction.[3]

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (Doc. 17) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 24) be **granted** and that Plaintiff's complaint be **dismissed with prejudice** to its refiling in forma pauperis.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are

---

[3] To secure a preliminary injunction, the movant has the burden of proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweights any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest. <u>Enterprise International, Inc. v. Corporacion Estatal Petrolera Ecuatoriana</u>, 762 F.2d 464, 471 (5th Cir.1985). Plaintiff has not set forth specific facts that, if proved, would satisfy that burden.

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of July, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE